Carl J. Withroe (Idaho State Bar No. 7051)
carl.withroe.service@mooneywieland.com
MOONEY WIELAND PLLC
802 W. Bannock St., Ste 500
Boise, ID 83702
t: 208.401.9219
f: 208.401.9218

Andrew Rozynski, Esq. (NY# 5054465)*
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)

*Attorneys for Plaintiff*

* *Pro hac vice* admission sought and motion to be filed

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Matthew Burgoyne,** | Case No. |
| Plaintiff, | |
| vs. | **Complaint** |
| **Rock Creek Firefighters Association, Inc.;** and **Rock Creek Rural Fire Protection District,** | |
| Defendants. | |

Plaintiff Matthew Burgoyne by and through his undersigned counsel, MOONEY WIELAND PLLC and EISENBERG & BAUM, LLP, hereby files this Complaint against Defendants and alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Matthew Burgoyne is a deaf individual who is considered disabled under federal and state antidiscrimination laws. Plaintiff started working for Defendants as a volunteer firefighter in or around November 2017. During Mr. Burgoyne's employment, Defendants discriminated against him due to his disability of deafness by, including but not limited to, failing to provide reasonable accommodation and appropriate auxiliary aids and services, abusing him verbally and mentally, treating him differently and inferior to nondisabled firefighters, and terminating him in July 2019 based on his disability. Defendants' conduct violated state and federal antidiscrimination laws.

2.      Plaintiff brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure that deaf and hard-of-hearing persons are free from discrimination. Plaintiff seeks declaratory and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901, *et seq.*

## THE PARTIES

3.      Plaintiff Matthew Burgoyne is a 32-year-old deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. He is substantially limited in his major

life activities of hearing and speaking within the meaning of federal and state antidiscrimination laws. Mr. Burgoyne was a volunteer firefighter with Rock Creek Rural Fire Protection District until he was wrongfully fired in July 2019.

4.     Defendant Rock Creek Firefighters Association, Inc. is a 501(c)(3) corporation located at 1559 Main St. N., Kimberly, ID 83341. Defendant Rock Creek Rural Fire Protection District is a local fire department, duly organized pursuant to state law, Idaho Code §31-1401 *et seq.*, currently serving eastern Twin Falls County and portions of northwestern Cassia County, including the cities of Kimberly, Hansen, and Murtaugh. Defendant is located at 1559 Main St. N., Kimberly, ID 83341.

## JURISDICTION & VENUE

5.     The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

7.     Mr. Burgoyne is a 32-year-old deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication.

8.      Mr. Burgoyne's disability did not stop him from accomplishing many different matters in his life, such as working as a truck driver and an instructor for scuba diving and CPR, obtaining a Commercial Driver License, receiving a certificate for heavy machinery, and volunteering as a scuba diver and performing ropes rescues.

9.      Mr. Burgoyne started working as a volunteer firefighter for Defendants in November 2017.

10.     Mr. Burgoyne was a competent firefighter who was able to perform essential functions of his job; he completed approximately 60 classes, which is over 160 hours of training. He also responded to approximately 50 calls.

11.     As part of Mr. Burgoyne's job, he had to attend staff meetings with his supervisors and coworkers to discuss various information that the firefighters need to know to perform their duties and for their safety.

12.     Mr. Burgoyne requested reasonable accommodation, such as an ASL interpreter, to enable effective communication during these staff meetings.

13.     However, Defendants ignored and refused Mr. Burgoyne's requests for accommodation for these meetings.

14.     As part of Mr. Burgoyne's job, he had to receive various trainings to perform his duties and for his safety.

15.     Mr. Burgoyne requested reasonable accommodation to enable effective communication, such as an ASL interpreter, for these trainings.

16.     However, Defendants refused Mr. Burgoyne's requests for accommodation for these trainings.

17.     Before the new Fire Chief Aaron Zent took office, Mr. Burgoyne had permission to talk to other agencies. For example, in or about June 2018, Mr. Burgoyne was given permission by Captain Freeman and the prior Chief to contact Southern Idaho Regional Communications Center ("SIRCOMM"), a regional dispatch center, to find a way to communicate with the dispatcher. They were able to set up a communication system via text messages, where Mr. Burgoyne could inform the dispatcher that he is en route to the station, or the dispatcher to relay information to Mr. Burgoyne from other officers.

18.     However, Defendants prevented Mr. Burgoyne from speaking with outside agencies in attempting to establish reasonable accommodation.

19.     Mr. Burgoyne was also treated differently and lesser than other firefighters. For example:

a.   He was put on standby on most fire calls. He was not allowed to do certain jobs while new firefighters were allowed, although he had certificates and the new firefighters did not.

b.   At one mutual aid call with Twin Falls fire department, he was asked to stay in the command truck. He had to sit in the truck for four (4) hours while even the new firefighters were working on the scene. All he did was fill up an air bottle back to the station and clean up the scene after. When Mr. Burgoyne politely asked Assistant Chief Greg Vawser about why he was told to stay in the truck the whole

time, Assistant Chief Vawser got upset for questioning his command and gave Mr. Burgoyne a warning.

c. Mr. Burgoyne tried to work with Captain Jason Freeman about working in a wildland fire fighting job and getting a certification for the job, but his requests were ignored.

d. He had to research on his own for some communication system that will assist him to perform his job better, but with the prior Chief Jason Keller gone, he was not able to get the support he needed.

e. He was allowed to do station shift coverage with the prior Chief Jason Keller and did it for three times. When the prior Chief Jason Keller left, he was told that he can no longer do it as one needs to be certified to do station shift coverage. However, he found out that even new firefighters who are not certified have been doing the shift coverage.

f. When he requested certain items from the station, he was often denied because Defendants did not have enough or did not have budget for the items. However, he saw new firefighters getting the item before him. For example, the National Fire Protection Association's code 1841 specifies that turnout gear must be retired from service no more than ten (10) years after the manufacturing date. Mr. Burgoyne was left with expired turnout gears and no equipment. However, new firefighters were given all new turnout gears and equipment. Also, he had to purchase his own light and battery cable cutter, etc.

g.  During a flashover training, everyone is equipped with self-contained breathing apparatus ("SCBA"). When one of the captains was speaking through the mask to him and he had to ask others without masks to explain to him what was going on. When this happened, the captain and other firefighters laughed at him for not understanding.

h.  He was not allowed to drive big trucks although he was a truck driver for thirteen years with a clean record.

i.  Mr. Burgoyne put up his name along with "Deaf Firefighter" on his locker to make him feel proud. A couple days later, Captain Stacey Thomas ripped the label off from the locker without any explanation. Mr. Burgoyne asked Driver Operator Taylor Hunsaker if he had any more of the name plates for the locker to just put his name on it, but when Mr. Burgoyne came to the station the next day, he found out that a food paper plate was put up on his locker.

20.     Mr. Burgoyne was repeatedly subject to verbal abuse by his colleagues who made discriminatory and derogatory remarks at him, such as "retarded."

21.     Because of Defendants' failure to accommodate Mr. Burgoyne, he had to research and figure out many different things on his own to perform his job.

22.     When Mr. Burgoyne tried to stand up for himself, he was often dismissed and laughed at by Defendants' employees. For example, On February 20, 2019, when Mr. Burgoyne arrived at the station he found out that he did not receive any messages via radio, paging, or texts regarding a recent fire investigation. When he raised these communication

issues with Firefighter Dirks, who is in charge of radios and pagers, Dirks said that they were too busy to do anything. Mr. Burgoyne tried to explain to Dirks that he was be able to communicate with the dispatchers during the call outs and Dirks said that things cannot be always like that. Mr. Burgoyne also explained to Dirks that he has worked with Deputy Director Matt Dorsey and Director Hope Lindsey from SIRCOMM for a while to set up the communication system to make it a successful communication. Dirks said that he was surprised that SIRCOMM got a cell phone, just to communicate with Mr. Burgoyne. Dirks also said he thought it was a waste of time and would mess up the communication system. Dirks also laughed at Mr. Burgoyne and told him not to speak with SIRCOMM anymore. Another firefighter also laughed at Mr. Burgoyne along with Dirks.

23.     Because of the discrimination he experienced by Defendants and its employees, Mr. Burgoyne suffered extreme emotional distress and depression. Because of the discrimination, he had suicidal thoughts and had to get professional help. He was diagnosed as having a personality disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

24.     Mr. Burgoyne made internal complaints about the discrimination he experienced.

25.     On July 3, 2019, Mr. Burgoyne was terminated by Defendants. Specifically, the termination letter from the Fire Chief Aaron Zent stated that:

> The reason that you are being terminated is for multiple counts of insubordination. Matthew, you were directed in a meeting on June 12th, 2019 to bring all of your concerns and questions to me for all department issues. On Tuesday, June 18th, we had a conversation via text message that I gave you

direct orders that you were to come to me for needs and not go to other
organizations. You chose to continue to text SIRCOMM even though I told
you multiple times that did not need to happen. Your actions disrupted the
operations of a highly stressful dispatch center.

Prior to training starting on Monday, July 1st, 2019, the department had a
discussion about training and goals of FF I certification as a standard. Tuesday
morning, you texted Chris Nelsen and asked him questions about FFI, and the
discussion at training. As previously discussed, you are to come to me with all
questions and concerns. You finally texted me about FFI at 5:11 pm, and I
responded to you quickly and gave you all of the information that you needed.

26.     However, there was no insubordination that warranted Mr. Burgoyne's

termination. As noted above, Mr. Burgoyne had permission to talk to other agencies, including

SIRCOMM. Mr. Burgoyne had to contact the other agencies himself because Defendants

failed to accommodate him. On July 1st, 2019, there was a department meeting with everyone

before a training. Chris Nelson was talking to everyone about the requirements and classes to

meet their level until Chief Aaron Zent showed up a bit later. On July 2, 2019, Mr. Burgoyne

had to contact Chris Nelson because no one explained to him what Chris Nelson was saying

during the meeting. There was no response from him until that afternoon so Mr. Burgoyne

texted Chief Aaron Zent about it and he responded back with some of information. Mr.

Burgoyne took some more online classes. On July 3, 2019, Mr. Burgoyne texted Chief Aaron

Zent to inform him that the online classes are done. He was fired that day.

27.     According to Defendants' Employee Policy Manual, the offense of

insubordination in non-emergency situation is defined as "Willful disregard of a direct order."

The penalties of the 1st offense is "Verbal to Written," the 2nd offense is "Written to

Suspension," and the 3rd offense is "Suspension (up to 10 shifts) to Termination."

28.     Mr. Burgoyne was not given any suspension for an insubordination during his time with Defendants.

29.     On July 30, 2019, Mr. Burgoyne's appeal hearing for the termination took place before the Fire Commission, which upheld the termination.

30.     Mr. Burgoyne was, at all times, qualified to perform all functions of his job with reasonable accommodation.

31.     Despite Mr. Burgoyne's best efforts, Defendants and its employees treated Plaintiff in a way that is deliberately indifferent because of his disability, and have repeatedly failed to accommodate Plaintiff's disability.

32.     The discriminatory behaviors continued throughout Mr. Burgoyne's employment, and got worse after the prior Chief resigned. During his employment and throughout the present day, Mr. Burgoyne suffered and continues to suffer from embarrassment, violation of his civil rights, emotional distress, and irreparable damage to his reputation and career prospects.

## CONDITION PRECEDENT

33.     Pursuant to the requirements of the 42 U.S.C. § 2000e-5, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Idaho Human Rights Commission ("IHRC") on September, 13, 2019.

34.     The IHRC issued a Notice of Right to Sue on August 10, 2020.

35.     The EEOC issued a Notice of Right to Sue on September 29, 2020.

36.     This Complaint is timely in that it was filed within ninety (90) days of the issuance of the Notice of the Right to Sue by the IHRC and the EEOC.

37.     Therefore, Plaintiff has satisfied any and all conditions precedent to the filing of his Complaint.

## CLAIM I: VIOLATIONS OF TITLE I OF THE
## AMERICANS WITH DISABILITIES ACT

38.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

39.     At all times relevant to this action, Title I of the ADA, 42 U.S.C. §§ 12111, et seq. has been in full force and effect and has applied to Defendants' conduct.

40.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of hearing. Accordingly, he is an individual with a disability within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(2).

41.     Defendants are a covered entity and an employer within the meaning of Title I of the ADA, 42 U.S.C. §§ 12111(2) and 12111(5), respectively.

42.     Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

43.     Title I of the ADA defines discrimination to include "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or

status of such applicant or employee because of the disability of such applicant or employee."
42 U.S.C. § 12112(b)(1).

44.     Title I of the ADA further defines discrimination to include utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. § 12112(b)(3).

45.     Title I of the ADA further defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

46.     Title I of the ADA further defines discrimination to include "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

47.     The ADA prohibits retaliation, stating that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).

48.     The ADA further prohibits retaliation, stating that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

49.     Defendants discriminated against Plaintiff on the basis of his disability by discriminating against him in regard to the terms, conditions, and privileges of employment in violation of 42 U.S.C. § 12112(a); limiting him in a way that adversely affects his opportunities and status in violation of 42 U.S.C. § 12112(b)(1); using methods of administration that have the effect of discrimination on the basis of disability in violation of 42 U.S.C. § 12112(b)(3); failing to make reasonable accommodations in violation of 42 U.S.C. § 12112(b)(5)(A); denying employment opportunities based on the need to make such accommodations in violation of 42 U.S.C. § 12112(b)(5)(B); retaliating against Plaintiff for asserting his ADA rights in violation of 42 U.S.C. § 12203(a); and threatening and interfering with Plaintiff's exercise of his ADA rights in violation of 42 U.S.C. § 12203(b).

50.     On information and belief, discrimination against deaf and hard of hearing individuals is the result of a policy and/or practice of Defendants to limit, restrict, or segregate employees based on their disability.

51.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf employees.

52.     Plaintiff is therefore entitled to compensatory and punitive damages, injunctive relief, and an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12117(a).

## CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

53.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

54.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

55.     At all times relevant to this action, Plaintiff has had a substantial limitation to the major life activities of hearing, speaking, and reading, and has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9).

56.     At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

57.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

58.     Defendants subjected Plaintiff to discrimination, solely on the basis of disability, in violation of 29 U.S.C. § 794.

59.     Plaintiff is therefore entitled to compensatory damages, injunctive relief, and an award of attorney's fees, costs, and disbursements, pursuant to 29 U.S.C. § 794(a).

## CLAIM III: VIOLATIONS OF IDAHO HUMAN RIGHTS ACT

60.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

61.     At all times relevant to this action, the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.* has been in full force and effect and has applied to Defendants' conduct.

62.     At all times relevant to this action, Plaintiff has had substantial impairments to the major life activities of hearing, speaking, and reading and has been a qualified individual with a disability within the meaning of § 67-5902.

63.     At all times relevant to this action, Defendants have been an employer within the meaning of § 67-5902.

64.     Pursuant to § 67-5902, it is discrimination "[f]or an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to compensation or the terms, conditions or privileges of employment or to reduce the wage of any employee in order to comply with this chapter," against any person "because of, or on the basis of, disability."

65.     Defendants subjected Plaintiff to discrimination "because of, or on the basis of, disability" in violation of the Idaho Human Rights Act.

66.     Plaintiff is therefore entitled to compensatory damages and injunctive relief pursuant to § 67-5908.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A.       Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title I of the ADA, the RA, and the IHRA.

B.       Award to Plaintiff:

i.  Compensatory damages pursuant to the ADA, the RA, and the IHRA;

ii.  Punitive damages pursuant to the ADA;

iii.  Reasonable costs and attorneys' fees pursuant to the ADA and the RA;

iv.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v.  Any and all other relief, including back pay or front pay, that this Court finds necessary and appropriate.

Dated November 4, 2020

Carl J. Withroe, ISB No. 7051
carl.withroe.service@mooneywieland.com
MOONEY WIELAND PLLC
802 W. Bannock St., Ste 500
Boise, ID 83702
t: 208.401.9219
f: 208.401.9218

`

Andrew Rozynski, Esq. (NY# 5054465)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
t: 212-353-8700
f: 212-353-1708

*Attorneys for Plaintiff*